**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**JAMETRIUS MCCON, DARYL D. WILLIAMS,
LARRY HENDERSON and LAMARIO HENDERSON**                    **PLAINTIFFS**

**VERSUS**                                                **CASE 1:17cv77-LG-RHW**

**ADOLFO PEREZ and D&D EXPRESS TRANSPORT CORP**           **DEFENDANTS**

**-AND-**

**D&D EXPRESS TRANSPORT CORP**                            **COUNTER-PLAINTIFF**

**VERSUS**

**DARYL D. WILLIAMS**                                     **COUNTER-DEFENDANT**

### MEMORANDUM IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFF JAMETRIUS MCCON'S MOTION TO COMPEL [85]

**MAY IT PLEASE THE COURT:**

Defendants, D&D Express Transport Corp and Adolfo Perez, ask the Court to deny Plaintiff Jametrius McCon's Motion to Compel [85], because McCon has not demonstrated good faith in this discovery dispute or that Defendant's objections are invalid and should be overruled.

### BACKGROUND

This lawsuit is a simple rear-end collision case caused by Plaintiff Daryl Williams' failure to properly maintain his vehicle, which resulted in Williams' car coming to a stop or near-stop on I-10 in the path of Defendant Adolfo Perez such that Perez could not stop his 18-wheeler when the emergency situation caused by Williams presented itself. McCon was a passenger in Williams' car at the time of the collision. Although McCon alleges spoliation of EDR, **Mississippi does not recognize a cause of action for spoliation of evidence.**[1]

---

[1] See *Dowdle Butane Gas Co. v. Moore*, 831 So.2d 1124, 1136 (Miss. 2002) ("We refuse to recognize an independent cause of action for intentional spoliation of evidence against first and third party spoliators.");

McCon asserts he has made "good faith" efforts to resolve the instant discovery dispute, but that is not true. As shown in the communications attached to Defendants' Response, McCon demanded supplementation and additional information without attempting to demonstrate why he is entitled to the information over Defendants' objections, as required in *Rust College*.[2] While McCon's "good faith" letter was nothing more than, "These documents are discoverable—please produce."[3] Defendants responsive letter provided further support for the stated objections.[4]

Subsequent to McCon filing his Motion to Compel [85], defense counsel was able to confer with Defendants and provide supplemental responses, which were served September 29, 2017 and October 10, 2017[5] In the supplemental responses, defense counsel maintained objections to McCon's request for Perez's personnel file and Perez's payment information: all other requests were fully answered.

## LAW AND ARGUMENT

### I.    Standard of Review

A motion to compel may be decided by a magistrate judge, who may rule directly on a non-dispositive pretrial motion.[6] A motion to compel "is non-dispositive and is subject to a 'clearly erroneous or contrary to law' standard of review by the district court."[7] "The 'clearly erroneous' standard applies to the magistrate judge's factual determinations," and "[t]he

---

*Richardson v. Sara Lee Corp.*, 847 So2d 821, 824 (Miss. 2003) ("In *Dowdle*, this Court refused to recognize a separate tort for intentional spoliation of evidence against either first or third party spoliators, and this Court's reasoning in *Dowdle* certainly undergirds our decision today in refusing to recognize a separate tort for negligent spoliation of evidence.").

[2] See *Jane Does 1-4, 6 & 7 v. Rust College*, 2015 WL 3514368, at *1 (N.D. Miss. Jun. 4, 2015) ("However, although Rule 26(b)(1) is to be construed liberally, discovery does not operate without limits.").

[3] See **Exhibit A**, August 31, 2017 email attaching letter from McCon.

[4] See **Exhibit E**, September 14, 2017 email attaching formal letter.

[5] See Notices of Service [92]. [93], [94], [95], 109].

[6] *Bituminous Cas. Corp. v. Smith Bros. Inc.*, No. 2:07CV354-KS-MTP, 2009 WL 10676928, at *2 (S.D. Miss. Jan. 7, 2009) (citing 28 U.S.C. § 636(b)(1)(A)).

[7] *Id.* (citing Fed. R. Civ. P. 72(a); *Castillo v. Frank*, 70 F.3d 382. 385 (5th Cir. 1995)).

'contrary to law' standard applies to the magistrate judge's legal conclusions."[8] When applying the facts to the applicable law, McCon's Motion to Compel [85] should be denied.

## II.    McCon's Motion to Compel should be denied on procedural grounds.

### A.    *McCon failed to provide the Court with the Mandatory Good Faith Certificate.*

To file a motion to compel discovery, the moving party must file a Certificate of Good Faith with the motion. "Rule 37.1(a) of the Local Rules for the United States District Court for the Southern District also requires counsel to confer in good faith prior to the filing of a discovery motion and further requires that 'a Good Faith Certificate (Form #4)[9] **shall** be filed with all discovery motions, with a copy to the Magistrate Judge.' Thus, the attachment of a Good Faith Certificate, in proper form, **is a mandatory prerequisite** to the Court's consideration of a motion to compel."[10] Indeed, Local Rule 37(c) states that failure to comply with part (a) of the rule will result in denial of the motion without prejudice.

Judge Barbour explains that this prerequisite is not an empty formality, but a mandatory showing to prevent parties from claiming they conferred in good faith when they had not.[11] The Court further specified, "the requirement of a certificate cannot be satisfied by including with the motion copies of correspondence that discuss the discovery at issue. Rather, both attorneys must certify that they conferred on the discovery issues in an attempt to resolve them. **The Court is unwilling to decipher letters between counsel to conclude that the requirement has been met.**"[12] Thus, the Certificate is a simple device to certify to the court that both parties have acted in good faith before seeking the Court's time to resolve the issues.

In this case, McCon did not attach a Certificate of Good Faith. Moreover, McCon has not

---

[8] *Id.* (citing *Smith v. Smith*, 154 F.R.D. 661, 665 (N.D. Tex. 1994)).
[9] Form #4 is accessible at http://www.mssd.uscourts.gov/court-info/local-rules-and-orders.
[10] *Ross v. CitiFinancial, Inc.*, 203 F.R.D. 239, 240 (S.D. Miss. 2001) (emphasis added).
[11] *Id.* (emphasis added).
[12] *Id.*

acted in good faith to resolve the dispute with Defendants, because instead of attempting to address Defendants' objections, McCon reiterated his demands for production with "These documents are discoverable—please produce" and ignoring the fact that Hurricane Irma impeded defense counsel's ability to communicate with Defendants. Therefore, the Court should deny McCon's Motion [85] for failure to comply with the Local Rules and failure to act in good faith.

**B.    *McCon failed to comply with Local Rule 37(b).***

Local Rule 37(b) states, in part, that "[m]otions raising issues concerning discovery propounded under FED. R. CIV. P. 33, 34, 36, and 37, must quote verbatim each interrogatory, request for production, or request for admission to which the motion is addressed, and must state: (1) the specific objection; (2) the grounds assigned for the objection (if not apparent from the objection itself), and (3) the reasons assigned as supporting the motion."[13] Furthermore, "[t]he objections and grounds must be addressed to the specific interrogatory, request for production, or request for admission and may not be general in nature."[14] In other words, McCon cannot provide general objections or general reasons for why Defendants' objections are not proper. Putting all of the Federal Motor Carrier Safety Regulations ("FMCSR"), which may or may not be relevant, in the middle of the motion is not sufficient. It is not the Defendants' or the Court's obligation to decipher which regulation McCon refers to in his reasoning in support of the motion for each discovery request in dispute. Local Rule 37(c) states that failure to comply with part (b) of the rule will result in denial of the motion without prejudice.

Rule 26 was amended effective December 1, 2015 and "[i]nformation is discoverable under revised Rule 26(b)(1) if it is **relevant to any party's claim or defense and is**

---

[13] S.D. Miss. Local Rule 37(b).
[14] *Id.*

**proportional to the needs of the case**."[15] "The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials."[16] "It is well established that the scope of discovery is within the sound discretion of the trial court."[17] However, "the party seeking to compel discovery has the burden of demonstrating clearly that information sought is relevant to the case."[18] To place the burden on the opponent "is to ask that party to prove a negative. This is an unfair burden, as it would require a party to refute all possible alternative uses of the evidence, possibly including some never imagined by the proponent."[19]

Defendants are not required to prove the evidence sought is relevant to any party's claim or defense and proportional to the needs of the case: that is McCon's responsibility. Saying "documents are discoverable—produce," is the equivalent of saying "because, I said so." There is no case that obligates Defendants to respond with production after such a request. By neglecting to fulfill the requirements of Rule 37 by providing specificity in the reasoning to compel, McCon is seeking to require Defendants to prove a negative, which is an unfair burden. Thus, the Court should deny the Motion [85] for failure to comply with the Local Rule 37(b).

### III. McCon failed to carry his burden to show how the information requested is relevant based on the allegations of the Complaint [1].

McCon is correct in that F.R.C.P 26(b)(1) outlines the boundaries of what is permissible discovery. Unfortunately, he follows with the conclusory statement "documents required to be

---

[15] Fed. R. Civ. P. 26 (2015 Amendment Cmt.) (emphasis added).

[16] *FC Meyer Packaging, LLC v. Converting Alternatives Int'l, LLC*, No. 2:16-CV80-KS-MTP, 2017 WL 752290, at *2 (S.D. Miss. Feb. 27, 2017) (citing *Herbert v. Lando*, 441 U.S. 153, 177 (1979)).

[17] *Id.* (quoting Freeman v. United States, 556 F. 3d 326, 341 (5th Cir. 2009)).

[18] See *Jane Does 1-4, 6 & 7 v. Rust College*, 2015 WL 3514368, at *1 (N.D. Miss. Jun. 4, 2015); *see also Baptist Health v. BancorpSouth Ins. Services, Inc.*, 270 F.R.D. 268, 272 (N.D. Miss. 2010); see also *FC Meyer Packaging, LLC*, 2017 WL 752290, at *3 (noting the burden on plaintiff).

[19] *Ashton v. Knight Transp., Inc.*, 2009 WL 4580801, at *1 (N.D. Tex. Dec. 4, 2009) (internal punctuation omitted). *See also Samsung Electronics America Inc. V. Chung*, 2017 WL 896897, at *14 (N.D. Tex. Mar. 7, 2017).

maintained by the FMCSR are relevant to the issues in the case, and discoverable."[20] There is no legal precedent that every piece of information that the FMCSR covers is relevant and discoverable in a case concerning a tractor trailer accident, because it is not. McCon cites *Utz* for the proposition that Mississippi law "holds that violations of the FMCSR may be considered by the jury on the issue of liability,"[21] but *Utz* is a case about jury instructions, not discovery.[22]

In *Utz*, plaintiff wanted to introduce separate jury instructions pertaining to each and every FMCSR violation that could be pointed to as the cause of the incident, including: failure to use reflective tape, taillight visibility, and "out of service" violations for the *single* trailer involved, because Utz died when he rear-ended a trailer that violated the conspicuity regulations.[23] The trial court instead granted only a single jury instruction that covered all of the violations. The appeals court, in considering the trial court's decision, found "the trial court properly refused [plaintiff's] instructions."[24] The plaintiff in *Utz* was aware of violations of the FMCSR because the trailer lacked conspicuity tape, and plaintiff alleged those violations as the proximate cause of Utz's death. In this case, McCon has not alleged any violation of the FMCSR that is a proximate cause of the accident, even though McCon must demonstrate the discovery he seeks is relevant to his claim in this lawsuit.

In *Rust College* the Court examined the Amended Complaints to determine whether the information sought was relevant.[25] In denying the motion to compel, the Court reasoned:

> The court has carefully reviewed the Amended Complaints in each of these remaining cases, and it is clear that the plaintiffs' claims are that it was the actions of defendant Oliver which were the source of the sexually hostile educational environment which plaintiffs contend they were required to

---

[20] See Memo [86], pg. 2.
[21] *Id.* at 3.
[22] See *Utz v. Running & Rolling Trucking, Inc.*, 32 So.3d 450 (Miss. 2010).
[23] *Id.* at 476-77.
[24] *Id.* at 477.
[25] 2015 WL 3514368, at * 3.

endure. The one vague mention in the pleadings that "others" committed similar acts is simply too vague and falls far short of convincing the court that plaintiffs require access to other unrelated complaints of sexual misconduct by other persons against individuals who are not parties to this action to succeed in their claims that Rust had actual notice of misconduct by defendant Oliver which might convince a reasonable jury that Oliver constituted a risk of harm to these plaintiffs.[26]

In this case, when the Court examines the Complaint [1] filed by McCon, it will note McCon did not make any allegation regarding violation of FMCSR or failure to maintain equipment.[27] Moreover, in his Motion to Compel [85], McCon does not point to specific violations or point to facts that could lead to discovery of such violations; he merely states conclusively that Defendants are required to provide him that information "because it is discoverable." This is conclusory and does not address any of Defendants' objections. As such, McCon fails to carry his burden to provide a reason for the compulsion of discovery from Defendants.

McCon further accuses Defendants of not providing objections with enough specificity in violation of many other states' law—not Mississippi's law—but fails to acknowledge that Defendants provided further reasoning and legal support for those objections.[28]  Rather than provide the reasoning required for his request for supplementation, McCon filed his Motion to Compel [85]. Moreover, McCon argues Defendants failed to state "what specific harm would occur if Defendant was required to respond in full."[29] Yet, Mississippi and the Fifth Circuit do not require such a statement of harm, nor does Rule 33. The specific harm requirement in *Liguria Foods, Inc.* is from Iowa based on a *sua asponte* holding from a single judge,[30] a development

---

[26] *Id*.
[27] See Complaint [1].
[28] *See* **Exhibit E**.
[29] Motion [85], pg. 5.
[30] *Liguria Foods, Inc. v. Griffith Laboratories, Inc.*, 320 F.R.D. 168 (N.D. Iowa 2017); see also *St. Paul Reins. Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000). Both cases are presided over by Judge Bennett and in *Liguria Foods*, he references *St. Paul Reins. Co.* to further remark on his agitation with obstructionist discovery responses after having spoken to both attorneys about producing discovery multiple times over **two years**.

not seen throughout the jurisdiction and not adopted in Mississippi. Regardless, the *Liguria Foods, Inc*. court did not impose sanctions or make the parties waive their objections, as McCon requests. The Court should ignore this citation since it is not the standard in this jurisdiction.

*Clemons* is more instructive.[31] In *Clemons*, the court said:

> To support an objection to a production request, the party must do more than merely say that a production request was overly broad, burdensome, oppressive and irrelevant. *McLeod, Alexander, Powell & Apffel v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). Here Dollar General offers that the requested information would cover 8900 stores in 35 states [Doc. #65, p. 2]. The request for *all* the positions and names of individuals filling those positions throughout the company is without question overly broad.[32]

The Court went on further to state: "As to the issue of relevance, the court finds *Marshall v. Westinghouse Electric Corporation*, instructive: '[I]n the context of investigating an individual complaint the most natural focus is upon the source of the complained of discrimination—the employing unit or work unit…. To move beyond that focus the plaintiff … must show a more particularized need and relevance."[33] Like defendant Dollar General in *Clemons*, Defendants have provided similar objections and responses to McCon's Requests. In response to McCon's Letter, Defendants provided further support for their objections, similar to how Dollar General did in *Clemons*. Thus, Defendants acted within Mississippi standards when responding to requests, by objecting with enough specificity, and trying to resolve the disputes amicably.

The largest dispute between the parties concerns Defendants' objections based on *Roberts v. Ecuanic Exp., Inc.*[34] Defendants submit that, because D&D Express has admitted vicarious liability for Perez, "evidence pertaining only to issues of negligent hiring, entrustment,

---

A quick survey of Iowa case law does not indicate other judges share Judge Bennett's view, and upon reviewing both cases, Judge Bennett refused to grant sanctions. Seventeen years later in *Liguria Foods*, he took no such action.
[31] *Clemons v. Dollar General Corp.*, 2010 WL 1994809, at *2 (N.D. Miss. May 18, 2010).
[32] *Id.*
[33] *Id.*
[34] *Roberts v. Ecuanic Exp., Inc.*, 2012 WL 3052838 (S.D. Miss. July 25, 2012).

supervision, or maintenance becomes superfluous and possibly unfairly prejudicial."[35] In

*Roberts*, the Court was faced with a 12(b)(6) motion to dismiss. The Court held:

> As noted above, once an employer has admitted that it is liable for its
> employee's actions, evidence pertaining only to issues of negligent hiring,
> entrustment, supervision, or maintenance becomes superfluous because the
> employer's liability will necessarily depend on the employee's liability.
> However, an employer can not be liable for punitive damages under a theory
> of vicarious liability. Therefore, evidence pertaining to the employer's
> independent gross negligence would not be superfluous or redundant, as there
> is no means for a plaintiff to obtain punitive damages against the employer
> solely through claims against the employee. Accordingly, while dismissal of
> Plaintiff's simple negligence claims against Ecuanic—for which no punitive
> damages may be awarded—is appropriate, dismissal of Plaintiff's gross
> negligence claims against Ecuanic would be inappropriate at this time.[36]

Earlier this year, the Mississippi Court of Appeals adopted the Federal Court's reasoning and

dismissed negligent hiring, training, retaining, and entrustment claims against an employer.[37]

Notably, the aforementioned cases did not involve the scope of discovery, and McCon

argues that, because he "alleges wantonness against D&D Express, and seeks punitive damages

for negligent hiring, training and supervision," he is permitted to conduct a wide-range of

discovery, the scope of which his before this Court. In analyzing McCon's argument, however,

this Court should look to the allegations of the Complaint [1], as discussed in *Rust College*,

supra, to determine whether the scope of discovery includes the information sought by McCon.

In this case, the Complaint [1] states:

> 6.    This is a claim for personal injuries and damages resulting from an automobile
>       collision which occurred in Jackson County, Mississippi on or about April 24,
>       2016. On said date and at said location, Plaintiff was a passenger in a motor
>       vehicle that was struck by Defendant Perez.
>       …
> 7.    The collision and the resulting injuries and damages to Plaintiff were the direct

---

[35] *Id.* at *2.

[36] *Id.* at *2 (internal citations omitted).

[37] *Carothers v. City of Water Valley*, No. 2015-CA-01808-COA, 2017 WL 2129701, at *5 (Miss. Ct. App. May 16, 2017) ("The City admitted vicarious liability. Thus, there was no need to show that it was negligent in hiring, training, retaining, or entrusting Officer Jackson.").

and proximate cause of the negligence of the Defendants.

8.    On or about April 24, 2016, Defendant Perez was acting within the line and scope of his employment as the agent, servant and/or employee of Defendant D&D.

9.    On the occasion complained of, Defendant Perez was liable for acts of negligence, including but not limited to the following:

   (a)    Failure to maintain a proper lookout;

   (b)    Failure to maintain proper control of his vehicle;

   (c)    Failure to exercise reasonable care in the operation of his vehicle;

   (d)    Negligent and careless failure to stop or slow his vehicle when he saw or within the exercise of reasonable care should have seen that the failure to do so would subject the Plaintiff to an unreasonable risk of harm;

   (e)    Driving his vehicle in excess of the posted speed limit;

   (f)    For his other acts of negligence to be shown at a hearing and/or trial of this cause.

…
16.    On the occasion complained of, Defendant Perez was liable for acts of willful, wanton and/or reckless conduct, including but not limited to the following:

   (a)    Failure to maintain a proper lookout;

   (b)    Failure to maintain proper control of his vehicle;

   (c)    Failure to exercise reasonable care in the operation of his vehicle;

   (d)    Reckless failure to stop or slow his vehicle when he saw or within the exercise of reasonable care should have seen that the failure to do so would subject the Plaintiff to an unreasonable risk of harm;

   (e)    The willful, wanton and/or reckless act of driving his vehicle in such a manner as to show a disregard of a known serious danger;

   (f)    For his other acts of willful, wanton and/or reckless conduct to be shown at a hearing and/or trial of this cause.

…
**21.    Plaintiff alleges that, at the times and places set forth hereinabove, Defendant D&D negligently supervised and/or trained Defendant Perez.**
**…**
**23.    Plaintiff alleges that, at the times and places set forth hereinabove, Defendant**

**D&D wantonly supervised and/or trained Defendant Perez.**[38]

The bolded allegations are the only substantive allegations made against D&D Express. Yet, when reviewing the Complaint [1] as a whole, there are no facts to support either allegation or McCon's demand for production of the disputed discovery.

The United States Supreme Court in *Iqbal* set forth a succinct framework for sufficiency of a claim:

> "[D]etailed factual allegations" are not required, but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Two working principles underlie *Twombly*. First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. Second, determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense…While legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[39]

The Fifth Circuit has said that *Iqbal* and *Twombly* "were designed to avoid subjecting defendants to lengthy and expensive discovery when the plaintiff is merely on a fishing expedition."[40] Moreover, if McCon were to ask this Court to allow the discovery requested so he may thereafter amend his complaint to assert additional alleged facts (noting the deadline to amend has run), it would unquestionably imply he is seeking permission to go on a fishing expedition.[41]

It cannot be ignored that this very Court has rejected punitive damages claims against a

---

[38] *See* Complaint [1].
[39] *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1940–41, 173 L. Ed. 2d 868 (2009) (internal citations and quotations omitted).
[40] *Flagg v. Stryker Corp.*, 647 F. App'x 314, 318 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678–80, 129 S.Ct. 1937; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59, 127 S.Ct. 1955 (2007)).
[41] See *Smith v. Union Nat'l Life Ins. Co.*, No. 1:15-CV-9-KS-RHW, 2017 WL 599417, at *4 (S.D. Miss. Feb. 14, 2017) ("Furthermore, Plaintiff's assertion that she will be able to plead her claims with sufficient particularity after receiving discovery implies that she is asking the Court's permission to go on a fishing expedition.").

trucking company arising out of a rear-end collision, even after evidence was presented of the driver's multiple speeding tickets and accidents, absence of any training over seven years, lack of a medical card, as well as log book and hour violations.[42] In *Curd*, Judge Guirola agreed "that it is unnecessary for a plaintiff to present evidence of negligent entrustment, or for that matter negligent hiring or training, where the defendant employer admits vicarious liability."[43] Judge Guirola also found "the defendants would be unduly prejudiced by the presentation of that unnecessary evidence," and that "plaintiffs' claims of negligent entrustment, hiring, and training should be dismissed."[44]

Judge Guirola then went on to address plaintiff's claims for gross negligence, wantonness and punitive damages, noting punitive damages are "only appropriate in the most egregious cases" and that "wanton conduct has been defined to include an intentional act of unreasonable character and the reckless disregard of known or obvious risks that are so great as to make it highly probable that harm will follow."[45] Plaintiff argued the trucking company, Western Express, was liable for punitive damages because:

1. Western Express was "grossly negligent in hiring and entrusting a vehicle to Guillory when he had received about three speeding tickets and had been involved in about ten accidents, six of which were deemed preventable under the Federal Motor Carrier Safety Regulations";

2. Driver Guillory "received no training in the seven years he worked for Western Express, aside from his initial safety orientation";

3. A "past Department of Transportation audit that found some log and hour violations committed by Western Express"; and

4. Driver "Guillory was not medically qualified to drive the tractor-trailer under the FMCSR, because the vision in his left eye is 20/50."[46]

---

[42] See *Curd v. W. Exp., Inc.*, No. 1:09CV610-LG-RHW, 2010 WL 4537936, at *1 (S.D. Miss. Nov. 2, 2010).
[43] *Id*. at *2.
[44] *Id*.
[45] *Id*. (citing *Pigford v. Jackson Pub. Sch. Dist.*, 910 So.2d 575, 579 (¶ 19) (Miss.Ct.App .2005)).
[46] *Id*. at *3.

Nevertheless, Judge Guirola found the conduct "constitutes, at most, simple negligence. The accident at issue was a rear-end accident that contained no aggravating factors that would justify punitive damages."[47] McCon makes the same arguments in his Motion [85] in an effort to obtain similar alleged evidence.

In this case, the Complaint [1] alleges a simple rear-end collision that occurred on April 24, 2016. In its Answer [10], D&D Express admitted vicarious liability of its driver, Perez. The allegations of the Complaint are mere legal claims with no factual support and do not support the discovery requested. To allow the requested discovery provides McCon a pass to go on a fishing expedition where one is not warranted, especially in light of this jurisdiction's prior rulings in trucking cases. Therefore, McCon's Motion to Compel [85] should be denied.

## IV.  Specific responses to the "List of deficient discovery responses"

Defendants incorporate herein by reference their September 14, 2017 letter written in response to McCon's good faith letter. Defendants will respond to the latest "Compliance Requests" made in the Motion [85] (herein after referred to as "Plaintiff's Compliance Request [#2]"), which, for the first time, attempt to provide a basis for each request. Thus, in further response to the specific requests made part of McCon's Motion [85], Defendants state:

### D&D Express' Responses to McCon's Requests for Production

**REQUEST NO. 9: Records for all trucks operated by Perez.**

**Plaintiff's Compliance Request [#2]:** This is required by the FMCSR and will be relevant to why Perez rear-ended the vehicle occupied by the Plaintiff, whether Perez followed the FMCSR regarding hours of service in the trip when this wreck happened, and whether Perez was operating the same tractor involved in this wreck during the month of May, when the EDR data applicable to this wreck was erased from the tractor's EDR.

**Response:** There is no FMCSR regulation that requires Defendants to provide information for *every* tractor when such vehicles were not involved in the accident. Defendants

---

[47] *Id.*

have provided information regarding the tractor involved in the accident that forms the basis of this suit. Defendants have met their *Clemons* burden. McCon's compliance request, which is beyond the scope and seeks unrelated matter, fails to provide enough specificity to meet the *Marshall* burden. Furthermore, McCon has not stated specifically what regulation compels this production as required by F.R.C.P. 37 and Local Rule 37. As such, Defendants cannot reasonably determine what limitations were provided to make this request relevant.

Nevertheless, subsequent to McCon's Motion to Compel [85], D&D Express Supplemented its response to Request No. 9 to state, "Subject to those objections, Defendant states that the subject truck was the only truck driven by Perez for the time period of March 24-May 31. Therefore, Defendant has already produced all responsive documents in its possession. See Bates numbers D&D Express-000203-368. Defendant has no other responsive documents." Because D&D Express has produced all documents responsive to Request No. 9, McCon's Motion [85] should be denied.

**REQUEST NO. 13: Written responses regarding Perez's driving record.**

**Plaintiff's Compliance Request [#2]:** This is required by the FMCSR and will be relevant to whether Perez was a qualified driver pursuant to the FMCSR on the trip when this wreck happened, and whether the company is liable for negligent and wantonness in the supervision and training of Perez..

**Response:** FMCSR contains many regulations and not everything required by it is discoverable. In order to comply with Rule 26, McCon's request must contain specificity, be relevant, and fall within the scope of the pleadings. Previously, McCon requested *all* written responses from private companies or state agencies that could possibly be obtained. This includes communications and emails which made this request overly burdensome to produce.

The only issues McCon alleges are relevant are whether Perez was a trained and qualified driver at the time of the accident, which he was, even though the Complaint does not allege that

Perez was not. By there mere possession of a valid CDL license, Perez demonstrated the requisite training to operate a tractor-trailer. Defendants have produced Perez's Driver Service Record, CDL and medical certificate, all which demonstrate he was legally qualified to operate a tractor-trailer. More importantly, "[u]nder the regulations, a driver is only out of service when declared so by a Special Agent of the Federal Motor Carrier Safety Administration, see § 395.13".[48] In this case, Perez was not out of service. This is also information McCon could obtain by requesting information from the FMCSA and Florida Department of Motor Vehicles.

Additionally, as argued herein above, D&D Express admits Perez was acting in the course and scope of his employment with D&D Express at the time of the accident, and therefore any information regarding his hiring, training and supervision is irrelevant to the allegations made in the Complaint. Nevertheless, subsequent to McCon's Motion [85], Request No. 13 was supplemented to state, "Subject to those objections, Defendant is producing a copy of the Driver Service Record Report obtained on Perez prior to his being hired by Defendant, Bates numbered D&D Express-000405-406, with personal information redacted." Because D&D Express has produced all documents responsive to Request No. 13, McCon's Motion [85] should be denied.

**REQUEST NO. 14: Records from Perez's past employers.**

**Plaintiff's Compliance Request [#2]:** This is required by the FMCSR and will be relevant to whether Perez was a qualified driver pursuant to the FMCSR on the trip when this wreck happened, and whether the company is liable for negligent/wanton supervision and training.

**Response:** For the sake of brevity, Defendants incorporate herein by reference their response to Request No. 13 above. Nevertheless, subsequent to McCon's Motion [85], Request No. 14 was supplemented to state, "Subject to those objections, Defendant states there was only one prior employer and that employer did not respond. Therefore, Defendant does not have any

---

[48] *Lee v. Harold David Story, Inc.*, No. 3:09CV696TSL-MTP, 2011 WL 3047500, at *4 (S.D. Miss. July 25, 2011).

responsive documents." Because D&D Express does not have any documents responsive to Request No. 14, McCon's Motion [85] should be denied. Defendants cannot produce documents that they do not possess.

**REQUEST NO. 15: Perez's list of violations of motor vehicle traffic laws.**

**Plaintiff's Compliance Request [#2]:** This is required by the FMCSR and will be relevant to whether the company followed its rules in this specific job when the wreck happened, whether Perez was a qualified driver pursuant to the FMCSR , and whether the company is liable for negligent and wantonness in the supervision and training of Perez.

**Response:** For the sake of brevity, Defendants incorporate herein by reference their response to Request No. 13 above. Nevertheless, subsequent to McCon's Motion [85], Request No. 15 was supplemented to state, "Subject to those objections, Defendant states Perez did not have any violations. See Driver Service Record Report, Bates numbered D&D Express-000405-406, with personal information redacted." Because D&D Express has produced all documents responsive to Request No. 15, McCon's Motion [85] should be denied.

**REQUEST NO. 16: Perez's personnel file.**

**Plaintiff's Compliance Request [#2]:** The gathering and retention of these documents is required by the FMCSR and will be relevant to whether the company followed its rules in this specific job when the wreck happened, whether Perez followed the company rules in the trip when this wreck happened, and whether the company is liable for negligent and wantonness in the supervision and training of Perez.

**Response:** For the sake of brevity, Defendants incorporate herein by reference their response to Request No. 13 above. Defendants further state that, because they have shown Perez was a qualified driver, the entirety of his personnel file, which unquestionably contains confidential information, has nothing to do with supervision or training of Perez, who was licensed and met legal qualifications to drive a tractor-trailer. Furthermore, Perez's qualifications have been addressed elsewhere, and his personnel file is not necessary to address his qualifications: It is merely duplicative. As for whether it proves D&D Express is negligent in its

supervision or training, there is no indication of either, and Perez's personnel file is unrelated to how D&D Express trains or supervises its employees, nor could any matter in the file have any bearing on the *causation* of the accident. Therefore, D&D has not supplemented its response to Request No. 16 and asks this Court deny McCon's Motion [85] seeking this information.

**REQUEST NO. 17: Perez's driver qualification file (DQF).**

**Plaintiff's Compliance Request [#2]:** The gathering and retention of these documents is required by the FMCSR and will be relevant to whether the company followed its rules in this specific job when the wreck happened, whether Perez followed the company rules in the trip when this wreck happened, and whether the company is liable for negligent and wantonness in the supervision and training of Perez.

**Response:** For the sake of brevity, Defendants incorporate herein by reference their response to Request Nos. 13 and 16 above. Additionally, Plaintiff has not alleged that Defendants did not abide the FMCSR or shown that the FMCSR imposes a duty upon the carrier to the public. Whether D&D Express maintained the DQF is irrelevant to how the accident arose and has no relation to how Perez reacted or should have reacted when Perez appreciated Williams' vehicle inappropriately stopped or near stopped on the interstate in front of him. Furthermore, a DQF is unrelated to how D&D Express trains or supervises its employees, because training and supervision records are not required in the DQF. Nevertheless, subsequent to McCon's Motion [85], Request No. 17 was supplemented to state, "Subject to those objections, Defendant is producing documents Bates numbered D&D Express-000408-420." Because D&D Express has produced all documents responsive to Request No. 17, McCon's Motion [85] should be denied.

**REQUEST NO. 18: Driving logs from 6 months prior to wreck through May 31, 2016.**

**Plaintiff's Compliance Request [#2]:** The gathering and retention of these documents is required by the FMCSR and will be relevant to whether Perez followed the FMCSR regarding hours of service in the trip when this wreck happened, and whether Perez was operating the same tractor involved in this wreck during the month of May, when the EDR data applicable to this

wreck was erased from the tractor's EDR.

**Response:** Due to Hurricane Irma, Defendants were unable to further respond to McCon's "good faith" letter at that time. Subsequent to McCon's Motion [85], D&D Express Supplemented its response to Request No. 18 to state, "Subject to those objections, Defendant states that the log book was kept in the tractor after the accident, which was towed from the scene, and cannot be found. Therefore, Defendant does not have responsive documents. However, the responding officer examined the log book and found no violations." Because D&D Express cannot locate documents responsive to Request No. 18, McCon's Motion [85] should be denied. Defendants cannot produce documents they cannot locate.

**REQUEST NO. 19: Vehicle maintenance records for 6 months prior to the wreck.**

**Plaintiff's Compliance Request [#2]:** The gathering and retention of these documents is required by the FMCSR and will be relevant to whether Perez and D&D followed the FMCSR regarding the inspections, maintenance and repairs to the tractor in the trip when this wreck happened, and whether the tractor had any mechanical problems which caused or contributed to it rear-ending the vehicle occupied by the Plaintiff.

**Response:** The Complaint [1] does not allege violation of any FMCSR regulation or failure to maintain equipment, and there has been no allegation of any mechanical issue with D&D Express' truck which caused or contributed to the accident. Moreover, at the time of McCon's "good faith" letter, Defendants' attorney communicated the inability to seek additiona information due to Hurricane Irma. Subsequent to McCon's Motion [85], D&D Express Supplemented its response to Request No. 19 to state, "Subject to those objections, Defendant states it is producing records in its possession, Bates numbered D&D Express-000397-404." Because D&D Express has produced the documents responsive to Request No. 19, McCon's Motion [85] should be denied.

**REQUEST NO. 21: Perez's payroll information for 6 months prior to the wreck and 2 months post-wreck.**

**Plaintiff's Compliance Request [#2]:** These documents will be relevant to whether Perez followed the FMCSR regarding hours of service in the trip when this wreck happened, and whether D&D followed the FMCSR in hours of service, and whether the pay rate of Perez created a motivation to drive negligently.

**Response:** McCon's reasoning is clearly a fishing expedition and it is duplicative of information already requested and provided in response to Interrogatory No. 4. Subsequent to McCon's Motion [85], D&D Express supplemented its response to Interrogatory No. 4 to provide the following information regarding Perez's earnings, "Whenever drivers would go to California, they had fixed rates because they almost always took the same route. D&D Express would pay $1,200 flat for trips to Southern California and $1,300 flat for trips to Northern California, along with some extra money if there were multiple picks, which equates to approximately 22 cents per mile. When drivers would go anywhere else, D&D Express would pay them 22 cents per mile per driver if team drivers or 42 cents per mile if a single driver." There is nothing in they salary information that creates any inference of an "incentive to drive negligently," nor is there anything to demonstrate a violation of any FMCSR Regulation. Therefore, McCon's Motion [85] should be denied.

**REQUEST NO. 22: Records regarding performance, appraisals, criticisms, reprimands, or infractions or driving offenses by Perez.**

**Plaintiff's Compliance Request [#2]:** The gathering and retention of these documents is required by the FMCSR and will be relevant to whether the company followed its rules in this specific job when the wreck happened, whether Perez followed the company rules in the trip when this wreck happened, and whether the company is liable for negligent and wantonness in the supervision and training of Perez. Plaintiff alleges wantonness against D&D Express, and seeks punitive damages for negligent hiring, training and supervision.

**Response:** For the sake of brevity, Defendants incorporate herein by reference their response to Request Nos. 13, 16 and 17 above. Additionally, whether Perez followed the rules

would only be relevant to this accident. The assumption that Perez had previous violations is presumptive. Nevertheless, subsequent to McCon's Motion [85], Request No. 22 was supplemented to state, "Subject to those objections, Defendant Perez did not have any negative appraisals, criticisms, or reprimands, nor did he have any infractions or driving offenses. While Defendant does not understand what Plaintiff seeks in this request, as a further response, see Driver Service Record Report, Bates numbered D&D Express-000405-406 and Driver's Road Test Examination, Bates numbered D&D Express-000407." Because D&D Express has produced documents responsive to Request No. 22, McCon's Motion [85] should be denied.

**REQUEST NO. 23: Policies and procedure manuals.**

**Plaintiff's Compliance Request [#2]:** This is required by the FMCSR and will be relevant to whether the company followed its rules in this specific job when the wreck happened, whether Perez followed the company rules in the trip when this wreck happened, and whether the company is liable for negligent and wantonness in the supervision and training of Perez.

**Response:** None of the FMCSR McCon cited require these documents. Indeed, 49 C.F.R. § 385, titled "Safety Fitness Procedures," pertains the procedure for evaluating carriers and rating them. Even 49 C.F.R. § 385.5, "Safety Fitness Standards," does not require the maintaining of policies, indexes or the imposition of *how* a carrier may conduct itself with regards to safety management, only that they comply with the various provisions throughout the act. Additionally, the existence or non-existence of any written policies and procedures have no relevance to the sufficiency of training and supervision of Perez. Nevertheless, subsequent to McCon's Motion [85], Request No. 23 was supplemented to state, "Subject to those objections, Defendant states it has no responsive documents." Because D&D Express does not have any documents responsive to Request No. 23, McCon's Motion [85] should be denied. Defendants cannot produce documents that they do not possess.

### D&D's Responses to McCon's Interrogatories

**INTERROGATORY NO. 7: Identification of repair facilities.**

**Plaintiff's Compliance Request [#2]:** The gathering and retention of these documents is required by the FMCSR and will be relevant to whether Perez and D&D followed the FMCSR regarding the inspections, maintenance and repairs to the tractor in the trip when this wreck happened, and whether the tractor had any mechanical problems which caused or contributed to it rear-ending the vehicle occupied by the Plaintiff.

**Response:** Due to Hurricane Irma, Defendants were unable to further respond to McCon's "good faith" letter at that time. Subsequent to McCon's Motion [85], D&D Express Supplemented its response to Interrogatory No. 7 to state, "Without waiving prior objections, Defendant directs Plaintiff to see the pre-accident repair records being produced as Bates numbers D&D Express-000397-404." Pursuant to Rule 33(d), D&D is permitted to attach to an interrogatory response its business records. By referencing the records produced in connection with D&D Express' Supplemental Response to Request No. 19, it has fully complied with answering this interrogatory. Therefore, McCon's Motion [85] should be denied.

**INTERROGATORY NO. 11: Disclosure of statements obtained.**

**Plaintiff's Compliance Request [#2]:** The existence of a statement is not privileged. Plaintiff simply asks for the identification of all statements taken – Fed. R. Civ. Proc. 26(b)(5)(A) requires a privilege log on this very issue – the Defendant must describe the document it objects to.

**Response:** McCon retained his attorney within ten (10) days of the accident, thereby creating notice of potential litigation. Despite McCon's assertions, any statements made in the course of investigating this incident in anticipation of trial is not discoverable by any party under Rule 26(b)(3)(1) unless it is discoverable under Rule 26(b)(1). Work-product is not discoverable under Rule 26(b)(1). Therefore, any statements gathered in the course of investigating this incident in anticipation of litigation is not discoverable and is privileged. Nevertheless, subsequent to McCon's Motion [85], Interrogatory No. 11 was supplemented to stated, "Subject

to previous objections, Defendant has not taken any statements." Because no statements were taken, D&D Express has no further information to provide, and therefore, McCon's Motion [85] should be denied.

**INTERROGATORY NO. 17: On-board GPS tracking.**

**Plaintiff's Compliance Request [#2]:** Plaintiff requests that Defendant formally respond to discovery and state whether there was any GPS tracking device or similar device on-board the tractortrailer at the time of the wreck, not just the EDR data.

**Response:** Due to Hurricane Irma, Defendants were unable to further respond to McCon's "good faith" letter at that time. Subsequent to McCon's Motion [85], D&D Express Supplemented its response to Interrogatory No. 17 to state, "There were no GPS tracking devices or similar devices on-board the tractor-trailer." D&D Express has fully answered Interrogatory No. 17, and therefore, McCon's Motion [85] should be denied.

**INTERROGATORY NO. 19: Identification of policies or procedures manuals.**

**Plaintiff's Compliance Request [#2]:** The policies and Procedures of D & D will be relevant to whether the company followed its rules in this specific job when the wreck happened, whether Perez followed the company rules in the trip when this wreck happened, and whether the company is liable for negligent and wantonness in the supervision and training of Perez..

**Response:** For the sake of brevity, Defendants incorporate herein by reference their response to Request No. 13 above. Nevertheless, subsequent to McCon's Motion [85], Interrogatory No. 19 was supplemented to state, "Subject to those objections, Defendant states it did not." Because D&D Express has fully responded to Interrogatory No. 19, McCon's Motion [85] should be denied.

**INTERROGATORY NO. 20: Initial and continuing training given to Perez.**

**Plaintiff's Compliance Request [#2]:** This is required by the FMCSR and will be relevant to whether the company followed its rules in this specific job when the wreck happened, whether Perez followed the company rules in the trip when this wreck happened, and whether the company is liable for negligent and wantonness in the supervision and training of Perez.

**Response:** None of the FMCSR sections McCon cited pertain to continual education and training similar to how attorneys are required to attend CLEs for their state's respective bars. The FMCSR only requires that a driver show he is qualified to obtain employment. Additionally, the FMCSR provision cited by McCon pertains to "entry-level drivers," and D&D Express has demonstrated that Perez already had prior experience such that he was not "entry-level." Nevertheless, subsequent to McCon's Motion [85], Interrogatory No. 20 was supplemented to state, "Subject to those objections, Defendant states no training was necessary since Perez had previous experience, a CDL and passed the company's road test examination." Because D&D Express has fully responded to Interrogatory No. 20, McCon's Motion [85] should be denied.

### Perez's Responses to McCon's Requests for Production

**REQUEST NO. 4: Perez's cell phone records.**

**Plaintiff's Compliance Request [#2]:** If Perez has made inquiries and the carrier stated that it cannot produce the records, then Plaintiff requests that Perez produce the letter or email sent requesting these documents. Alternatively, Plaintiff sent an authorization to Perez and requests that Perez sign the authorization.

**Response:** McCon's demand is nothing more than two additional Requests for Production, i.e. produce evidence of the inquiry or produce an authorization, neither of which is proper under the Rules. Perez does not have responsive documents to Request No. 4. Because Perez does not have responsive documents, McCon's Motion [85] should be denied.

**REQUEST NO. 7: Emails between Perez and D&D from March 24 to May 31, 2016.**

**Plaintiff's Compliance Request [#2]:** This time period would cover the time leading up to this wreck, going through the end of May, when the EDR data on the tractor was erased. These communications are relevant to many issues in the case including the hours of service, following company rules, and following the FMCSR.

**Response:** The FMCSR does not require that drivers maintain any and all emails they exchange with their employer. This is a blatant exaggeration of what the FMCSR governs. Nor

does any of the sections of the FMCSR McCon cited support his misstatement of the law. The request is vague and seeks irrelevant information on its face by seeking any and all emails exchanged. Any and all emails between a driver and employer could result in an exceedingly large amount of irrelevant information. Thus, McCon failed to carry his burden by saying "[t]hese communications are relevant to many issues." There is no specificity and Defendant cannot read McCon's mind to determine what he seeks from these emails. Nevertheless, subsequent to McCon's Motion [85], Request No. 7 was supplemented to state, "Without waiving these objections, Perez states that no responsive documents exist." Because Perez does not have responsive documents, McCon's Motion [85] should be denied.

**REQUEST NO. 8: Produce a copy of all driver's licenses for the past 10 years.**

**Plaintiff's Compliance Request [#2]:** If there are any other drivers licenses in this period, the driving record of Perez is relevant to whether the company was in compliance with the FMCSR, and whether Perez was qualified to drive.

**Response:** This Request exaggerates what the FMCSR requires. The FMCSR does not require a driver to maintain 10 years worth of CDL records as part of his application or DQF. In fact, 49 C.F.R. § 391.21(b)(5) states that a driver only needs to provide "each unexpired commercial motor vehicle operator's license." If a driver only has one, he only needs to supply one. Moreover, the only relevant matter is whether or not Perez possessed a valid CDL at the time of the accident, which he did as evidenced by the Accident report in McCon's possession and the CDL previously produced. The accident occurred on April 24, 2016, and Defendant produced his CDL issued on March 4, 2015.  As such, no other CDL would be relevant. Nevertheless, subsequent to McCon's Motion [85], Request No. 8 was supplemented to state, "Without waiving these objections, Perez does not have any further responsive documents." Because Perez does not have any other responsive documents, McCon's Motion [85] should be

denied.

**REQUEST NO. 9: Letters of reprimand for the past 10 years.**

**Plaintiff's Compliance Request [#2]:** This is required by the FMCSR and will be relevant to whether the company followed its rules in this specific job when the wreck happened, whether Perez followed the company rules in the trip when this wreck happened, and whether the company is liable for negligent and wantonness in the supervision and training of Perez.

**Response:** For the sake of brevity, Defendants incorporate herein by reference their response to Request Nos. 13, 16, 17, and 22 above for the Requests directed to D&D Express. Additionally, Request No. 9 was directed at Perez, not D&D Express, and therefore, is not related to McCon's alleged "wantonness" claim against D&D Express. Moreover, the scope of time is far removed from what would be relevant. Nevertheless, subsequent to McCon's Motion [85], Request No. 9 was supplemented to state, "Without waiving these objections, Perez states he does not have any responsive documents." Because Perez does not have any other responsive documents, McCon's Motion [85] should be denied.

**REQUEST NO. 10: Daily logs from 6 months prior to wreck through May 31, 2016.**

**Plaintiff's Compliance Request [#2]:** These documents are discoverable and required to be maintained by the FMCSR, and has direct and important bearing as to whether Perez was driving over the maximum hours provided, and also whether D&D knew about this, in disregard of the FMCSR, which is relevant to negligent/wanton supervision.

**Response: Response:** For the sake of brevity, Defendants incorporate herein by reference their response to Request No. 18 above for the Requests directed to D&D Express. Additionally, Request No. 10 was directed at Perez, not D&D Express, and therefore, is not related to McCon's alleged "wantonness" claim against D&D Express. Moreover, the scope of time is far removed from what would be relevant. Finally, Perez's original response clearly stated he does not possession responsive documents. Subsequent to McCon's Motion [85], Request No. 10 was supplemented to state, "Perez again states he does not have any responsive

documents. He cannot produce something that he does not possess." Because Perez does not

have any other responsive documents, McCon's Motion [85] should be denied.

### Perez's Responses to McCon's Interrogatories

**INTERROGATORY NO. 3: Identities of everyone with an interest in the trip and nature of said interest.**

**Plaintiff's Compliance Request [#2]:** Plaintiffs are entitled to a written description of who had a business interest in this trip as this is possibly a witness and/or a party to this suit. The bills of Lading produced may or may not contain all of the parties with business interests and so a written response is necessary. The bills of laden are not clear on its face as to this question.

**Response:** McCon is not "entitled" to a written description. Moreover, McCon has not

demonstrated how the information is relevant to any claim made in this lawsuit. The assertion

that *any person* with a business interest in this trip (the person who had its goods being

transported by Defendant who is the same person on the Bill of Lading) may be a witness is not

specific enough to overcome Defendant's previous objection. It instead is a fishing expedition.

Subsequent to McCon's Motion [85], Interrogatory No. 3 was supplemented to state,

"Without waiving previous objections, to my knowledge, only D&D Express Transport Corp.

and any person or entity listed on the Bills of Lading. Again, I have no further responsive

information." Perez has complied with this request per Rule 33(d) and no further response is

warranted. Therefore, McCon's Motion [85] should be denied.

**INTERROGATORY NO. 8: Perez's driving history for 7 years pre-accident.**

**Plaintiff's Compliance Request [#2]:** Perez's driving history is relevant to discoverable information as this is a trucking case where he rear-ended another driver. In addition, driving history documentation is required by the FMCSR and will be relevant to whether the company followed its rules in this specific job when the wreck happened, whether Perez followed the company rules in the trip when this wreck happened, and whether the company is liable for negligent and wantonness in the supervision and training of Perez.

**Response:** Despite Plaintiff's assertion that the FMCSR requires it, the FMCSR does not

require Perez to maintain a copy of his driving record. Additionally, Perez's driving history for 7

years is not properly limited in scope or time and bears no relation to whether he failed to follow any rules with respect to the trip when the accident occurred, and it has no relation to any "wantonness" by D&D Express. Furthermore, D&D Express produced a copy of Perez's Driver Service Record Report obtained on Perez prior to his being hired by Defendant, Bates numbered D&D Express-000405-406, with personal information redacted, which demonstrates a lack of any violations. Additionally, subsequent to McCon's Motion [85], Interrogatory No. 8 was supplemented to state, "Without waiving those objections, I never had any ticket or other accident before the wreck that is the subject of this lawsuit." Because Perez has fully answered Interrogatory No. 8, McCon's Motion [85] should be denied.

**INTERROGATORY NO. 15: Perez's employment history for the past 20 years.**

**Plaintiff's Compliance Request [#2]:** The employment history of Perez as a commercial driver is relevant as to whether he was a qualified driver according to the requirements of the FMCSR when this wreck happened and whether the company followed the FMCSR when it hired Perez. Plaintiff requests that Defendant state the "other companies" he worked for; his job title for each job; list the time periods for all jobs; and provide the address and contact telephone number for each.

**Response:** Despite the Plaintiff's assertions, the FMCSR does not require a driver to keep a list of each and every employer he has worked for over the previous 20 years. Furthermore, §391.21(10) only requires the applicant to record his previous employers for the 3 years preceding his applicant. Perez provided the information he recalls. McCon argues the information is relevant as to whether Perez was a qualified driver, yet "[u]nder the regulations, a driver is only out of service when declared so by a Special Agent of the Federal Motor Carrier Safety Administration, see § 395.13".[49] In this case, Perez was not out of service and Defendants have produced the documentation showing Perez was qualified to drive a tractor-trailer at the time of the accident. Anything else is irrelevant to this accident and McCon has not carried his

---

[49] *Lee v. Harold David Story, Inc.*, No. 3:09CV696TSL-MTP, 2011 WL 3047500, at *4 (S.D. Miss. July 25, 2011).

burden to obtain anything further. Nevertheless, subsequent to McCon's Motion [85], Interrogatory No. 15 was supplemented to state, "Without waiving previous objections, I cannot remember that far back. I have provide the information I currently recall prior to working for D&D Express." Because Perez does not have any other responsive information, McCon's Motion [85] should be denied.

## CONCLUSION

McCon failed to demonstrate he has operated in good faith, because he has failed to provide the Court a Certificate of Good Faith or adhere to Local Rule 37(a)(1) when he sought supplemental responses to discovery. Even if the Court does not require these mandatory prerequisites, McCon has not shown he operated in good faith when interacting with Defendants, because defense counsel explained Hurricane Irma was a roadblock to responding to McCon's "good faith" letter, and indeed, subsequent to McCon filing his Motion [85], Defendants supplemented nearly all of the items that are the subject of this dispute.

The only items Defendants have not supplemented concern Perez's personnel file and payroll records. McCon has not carried his burden to show that these items are discoverable under Rule 26 over Defendants' objections. Instead, McCon simply states that all of the information he wants is discoverable. Because McCon has not met his burden, the Court should deny the Plaintiff's Motion [85].

Respectfully submitted, this 10th day of October, 2017.

D&D EXPRESS TRANSPORT CORP and
ADOLFO PEREZ


By:    */s/ Kathryn Platt*
LARRY G. CANADA (#10480)
KATHRYN BREARD PLATT (#102141)
GALLOWAY, JOHNSON, TOMPKINS,

28

BURR & SMITH
2510 14th Street, Suite 910
Gulfport, MS 39501
Telephone: (228) 214-4250
Facsimile: (228) 214-9650
Email: lcanada@gallowaylawfirm.com
Email: kplatt@gallowaylawfirm.com
*Attorneys for Defendants, Adolfo Perez and D&D Express Transport Corp*

## CERTIFICATE OF SERVICE

I, Kathryn Breard Platt, one of the attorneys for Defendants, Adolfo Perez and D&D Express Transport Corp, do hereby certify that I have this date served the above and foregoing *Memorandum* upon all counsel of record and interested persons via the Court's MEC filing system.

So certified, this 10th day of October, 2017.

*/s/ Kathryn Platt*
KATHRYN BREARD PLATT (#102141)